IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD J. TERRY, SR., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:14cv953-WKW-TFM |
| | ) | [wo] |
| RUSSELL COUNTY BOARD | ) | |
| OF EDUCATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law (Doc. 6, filed September 23, 2014).  Pending before the Court is Defendants' *Motion to Dismiss First Amended Complaint* (Doc. 60, filed January 26, 2015), *Motion to Dismiss Amended Complaint* (Doc. 63, filed January 27, 2015), *Motion to Dismiss Amended Complaint* (Doc. 66, filed January 28, 2015), *Motion to Dismiss Plaintiff's Amended Complaint* (Doc. 68, filed January 30, 2015), *Motion to Dismiss* (Doc. 70, filed January 30, 2015), *Amended Motion to Dismiss* (Doc. 90, filed September 14, 2015), and Plaintiffs' *Response* (Doc. 81, filed April 2, 2015). The Court has carefully reviewed the *Amended Complaint*, motions to dismiss, and the briefs filed in support of and in opposition to Defendants' motions (Docs. 60, 63, 66, 68-71, 81, 90-91).  For good cause, it is the RECOMMENDATION of the Magistrate

Judge that the Defendants' motions to dismiss be GRANTED in part, and DENIED in part.

## I. JURISDICTION

The district court has subject matter jurisdiction over the claims in these 42 U.S.C. § 1983 (Civil Rights Act of 1871, as amended), 29 U.S.C. § 794 (Rehabilitation Act of 1973, as amended), 20 U.S.C. § 1400 (Individuals with Disabilities Education Act), and 42 U.S.C. § 1213 *et seq.* (Americans with Disabilities Act) actions pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).[1]   The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.   Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law (Doc. 6, filed September 23, 2014).

## II. STANDARD OF REVIEW

Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions.   *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").   In evaluating the sufficiency of a plaintiff's pleadings, the court must indulge reasonable inferences in plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce,*

---

[1] Plaintiffs do not specifically state which sections under the Americans with Disabilities Act or Rehabilitation Act their claims arise under.   However, upon thorough review of the *Amended Complaint*, it appears to this Court that Plaintiffs' claims arise under Title II of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act.

*N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. *See Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-62, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard). In *Twombly*, the Supreme Court emphasized that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.   Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations and emphasis omitted).

More recently, in *Iqbal*, the Supreme Court reiterated that although FED. R. CIV. P. 8 does not require detailed factual allegations; it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*   The

mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. *Id.* The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### III. BACKGROUND

The Court accepts as true all relevant facts set forth by the plaintiffs in their *Amended Complaint* (Doc. 60). Plaintiffs' claims brought under the Civil Rights Act, American with Disabilities Act ("ADA"), Rehabilitation Act, and Individuals with Disabilities Education Act ("IDEA") arise out of a verbal and physical altercation which occurred on November 14, 2011 between Shawn Taylor ("Taylor"), a high school teacher/coach, and Edward J. Terry, Jr. ("Terry, Jr."), a high school student with at least one disability.[2] *See* Doc. 37. Plaintiffs concede that Terry, Jr. escalated the verbal exchange; however, it was the result of a misunderstanding with Taylor's tone of voice due to Terry, Jr.'s disabilities. *See* Doc. 37 at 6. The physical altercation began after Taylor forcefully shoved Terry, Jr. out of the classroom, and continued with Taylor choking and kicking Terry, Jr. after pinning him up against the wall and on the ground. *See* Doc. 37 at 6-9. The physical altercation was recorded by at least two security cameras located inside of Russell County High School in Russell County, Alabama. *See* Doc. 37 at 8 (incorporating Exhibit F of Doc. 34 by reference). Plaintiffs state that as a "proximate and

---

2 Terry, Jr. is diagnosed with attention deficit hyperactivity disorder ("ADHD"), dyslexia, as well as other learning disabilities. *See* Doc. 37 at 5.

direct result" of Taylor's assault, Terry, Jr. suffered serious physical and emotional injuries that are reasonably expected to continue to affect him in the future.   *See* Doc. 37 at 9.

After the incident, Russell County Sheriff's Deputy Jimmy Parham ("Deputy Parham"), an African-American Resource Officer assigned to Russell County High School, began to conduct an investigation including interviews.   *See* Doc. 37 at 10. Before Sheriff Parham was able to begin conducting interviews, Defendant Russell County Sheriff Heath Taylor ("Sheriff Taylor), brother of Defendant Taylor, told Deputy Sheriff Parham to "stand down" and he assigned Defendant Russell County Sheriff's Deputy Bill Atkin ("Deputy Atkin"),[3] a Caucasian officer, to investigate the incident. *See* Doc. 37 at 11.

Plaintiff Dymphia Terry ("Mrs. Terry"), Terry, Jr.'s mother, arrived at the high school shortly after the incident ended; whereupon Defendant Principal Vantreise Davis ("Principal Davis") "falsely" told Mrs. Terry that Terry, Jr. had assaulted a teacher "very badly" requiring Terry, Jr. to be subdued.   *Id.*   Mrs. Terry was told that the incident was caught on videotape; however, Principal Davis refused to allow Mrs. Terry to view the video.   *Id.*   Knowing Terry, Jr. was involved in a physical altercation, Mrs. Terry asked Defendant Assistant Principal Barry Kirby ("Assistant Principal Kirby") to be allowed to give her son his albuterol inhaler which helps control his asthma and heart murmur, Mrs. Terry was refused access to her son for approximately thirty (30) to forty (40) minutes.

---

3 Plaintiffs' amended complaint incorrectly identified Sheriff's Deputy Bob Atkin as "Adkin."   *See* Doc. 69 at 1.

*Id.*   Upon being taken back and finally able to see her son, Mrs. Terry was still prevented from speaking with him while he was detained and questioned.   *See* Doc. 37 at 12.   Additionally, Mrs. Terry later found out Terry, Jr. made two requests to call his mother, both of which Deputy Atkin denied.   *Id.*   Mrs. Terry also states that Deputy Atkin failed to instruct Terry, Jr. of his rights as a juvenile in custody prior to detaining and interrogating him.   *Id.*

Following Deputy Atkin's questioning, Principal Davis suspended Terry, Jr. pending a disciplinary tribunal to be held at an undetermined later date.   *Id.*   However, Taylor was not sent home, and even coached one of the high school's sporting events later that evening.   *See* Doc. 37 at 13.   Based upon Plaintiffs' personal knowledge, to date, Taylor has not been suspended or otherwise punished in connection with the attack. *Id.*   Additionally, on November 15, 2011, despite being the alleged aggressor throughout the physical altercation, Taylor went to the juvenile court for Russell County, Alabama and "swore out a false delinquency petition charging Terry, Jr. with criminal harassment." *Id.*   Plaintiffs state that upon information and belief, Taylor filed the "false criminal charges" while acting on the advice of his brother, Sheriff Taylor, or other Defendants. *Id.*   Plaintiffs' allege that Taylor, acting in concert with Sheriff Taylor and other Defendants, preemptively filed the charges with the intent to "impede or interfere" with Terry, Jr.'s right to seek criminal assault charges against Taylor.   *Id.*

On November 16, 2011, a disciplinary tribunal was convened at Russell County High School to determine Terry, Jr.'s role in the November 14, 2011 incident.   *See* Doc.

37 at 14. The tribunal consisted of teachers Tammy Barnes, David Elmore, and Defendant Victoria Relf ("Relf") who is the Director of Special Education, and was chaired by Assistant Principal Kirby. *Id.* During the meeting, Assistant Principal Kirby recommended that the tribunal expel Terry, Jr. for one (1) year for assault and disorderly conduct toward a school board employee. *Id.* Although Plaintiffs were present at the hearing, they were not notified of the names of the witnesses against Terry, Jr., nor given any notice as to what each witness would testify to, or whether Plaintiffs would be allowed to produce witnesses or affidavits, and they were not provided an opportunity to do so. *Id.* Additionally, the tribunal did not view the video recordings of the incident. *Id.* By the conclusion of the meeting, the panel was split evenly for and against expulsion; thus, the matter was referred to Defendant Superintendent Mike Green ("Superintendent Green"). *See* Doc. 37 at 15.

On November 17, 2011, Plaintiffs received a letter from Superintendent Green informing them that Terry, Jr. violated the Student Code of Conduct for assault and disorderly conduct toward a school board employee and Terry, Jr. shall report to the Alternative Learning Center ("ALC") for the remainder of the school year. *Id.* Plaintiffs state that according to the Russell County School Handbook issued to parents and students, which defines Student Code of Conduct violations, Terry, Jr.'s part in the November 14, 2011 incident does not rise to the level of the required elements of assault and disorderly conduct toward a school board employee. Both of which are Class III violations subject to mandatory expulsion. *See* Doc. 37 at 16. For example, based

upon statements made during the disciplinary tribunal, Terry, Jr.'s alleged violation of disorderly conduct toward a school board employee was due to his use of profanity directed at Taylor.   *Id.*   Plaintiffs point to Code 2.26 of the Student Code of Conduct entitled "Profanity or Vulgarity (Use of profane or obscene language)" which as a Class II violation granted the disciplinary tribunal an option to expel the student or suspend the student for no longer than five (5) days.   *Id.*   Similarly, the Class III violation of assault requires "great bodily harm."   *Id.*   No evidence or medical records have been provided to Plaintiffs proving any bodily harm at all, much less "great bodily harm."   *Id.* Plaintiffs assert that Terry, Jr. was charged with the Class III violations with malicious intent, and with an intent to protect Taylor and interfere with Terry Jr.'s ability to seek a remedy against Taylor.   *See* Doc. 37 at 18.

Plaintiffs also assert that due to Terry, Jr.'s disabilities, he was due heightened procedural protections, which Defendants failed to afford him.   *Id.* (citing *Dixon v. Alabama State University*, 294 F.2d 150, 158-59 (5th Cir. 1961).   In addition to the procedural deficiencies with the disciplinary tribunal discussed above, Plaintiffs also claim Defendants failed to inform them that there was an appeal process in place that would have provided them an opportunity to appeal Terry, Jr.'s expulsion.   *See* Doc. 37 at 19, 21.   Plaintiffs also state that after Terry, Jr. was placed in ALC, Defendants failed to implement an Individualized Educational Program ("IEP") as mandated by the IDEA for children with a disability.   *See* Doc. 37 at 19.

On November 21, 2011, Plaintiffs were given access to the security camera recordings from two different angles. *See* Doc. 37 at 22. Upon watching the videos, it became clear to Plaintiffs that Taylor was the physical aggressor and the force used against Terry, Jr. was in excess of what was necessary for that situation. *Id.* After viewing the recordings, Plaintiffs decided to press criminal charges against Taylor for the assault on Terry, Jr. *Id.* In compliance with the procedures of the Russell County Warrant Magistrate's Office, Plaintiffs went to Russell County High School to file an incident report with Deputy Parham. *Id.* Deputy Parham took the complaint and generated an incident report. *Id.* On November 23, 2011, Plaintiffs went to the Russell County Sherriff's Office to request of copy of the incident report. *Id.* Sheriff Taylor attempted to dissuade Plaintiffs from filing charges against his brother, and told Plaintiffs his brother was only defending himself and that "not a law in Alabama is going to convict my brother." *Id.* Not persuaded by Sheriff Taylor's statement that seeking prosecution against Taylor was a waste of time nor his multiple attempts of intimidation, on November 28, 2011, Plaintiffs submitted the incident report to the Russell County Warrant Magistrate's Office to apply for a warrant. *See* Doc. 37 at 23. Upon seeing Taylor's name on the application, "the magistrate refused to issue a warrant or criminal complaint." *Id.* The magistrate stated he was unable to issue the warrant because the district attorney was currently prosecuting the case against Terry, Jr. *See* Doc. 37 at 24. Plaintiffs then requested Defendant District Attorney Ken Davis ("D.A. Davis") to

"present the criminal complaint against [Taylor] to a grand jury," but as a close childhood friend of Taylor and Sheriff Taylor, he refused Plaintiffs' request.

On January 3, 2012, Superintendent Green allowed Terry, Jr. to return to Russell County High School.   *See* Doc. 37 at 29.   However, Terry, Jr. was behind on his school work due to being sent to ALC after the altercation, and the situation was compounded when Defendants Principal Davis, Assistant Principal Kirby, Relf, Taylor, and other teachers "refused or failed to implement [Terry, Jr.'s] prescribed IEP or section 504 plan; and failed to provide or ensure that [Terry, Jr.] received his prescribed educational services and accommodations of his disabilities."   *Id.*   Between January and March of 2012, multiple meetings were convened regarding Terry, Jr.'s IEP and/or Section 504 of the Rehabilitation Act plan.   *Id.*   In attendance at these meetings were Mrs. Terry and Defendants Relf, Assistant Principal Kirby, Taylor, as well as the rest of Terry, Jr.'s teachers.   *Id.*   Defendants continued to refuse or fail to implement Terry, Jr.'s IEP plan, causing Terry, Jr. to fall further behind and making it impossible for him to pass all of his courses.   *See* Doc. 37 at 30.   As a result of Defendants' failures, Mrs. Terry withdrew Terry, Jr. from Russell County High School in May of 2012, and ultimately Mrs. Terry had to quit her job to home school Terry, Jr.   *See* Doc. 37 at 31.

On or about April 16, 2013, the criminal charges against Terry, Jr. were *nolle prossed*.   *See* Doc. 37 at 34.   Upon the criminal charges being *nolle prossed*, Mrs. Terry attempted to re-enroll Terry, Jr. in Russell County High School.   *Id.*   Principal Davis denied Terry, Jr re-admission stating that he was not allowed on school premises.   *Id.*

Thus, Defendants denied Terry, Jr. access to an education, access to special education services, and failed to accommodate his disabilities.   *Id.*

Plaintiffs assert that throughout the entire process, Terry, Jr. was subjected to racial discrimination because he is African-American.   *See* Doc. 37 at 20.   Plaintiffs state that Taylor, who is Caucasian, was not sent home following the physical altercation, despite the fact that on a regular basis African-American teachers were immediately sent home for "less severe alleged misconduct."   *Id.*   Similarly, African-American children were routinely punished more severely than their Caucasian counterparts.   *Id.*   Plaintiffs state they have personally witnessed white students use profanity in their teachers' presence "without any apparent discipline" and that it is their understanding that those rare instances where they are punished, Caucasian students generally only receive three (3) days of in-school suspension for a first offense.   *Id.*   By contrast, Terry, Jr.'s first offense for use of profanity was elevated to the Class III violation of disorderly conduct toward a school board employee, which is an automatic expulsion.   *Id.*

As a result of the culmination of events, Terry, Jr. has suffered lasting "physical and psychological injuries."   *See* Doc. 37 at 34.   Terry, Jr.'s pain and suffering has caused him to incur "expenses for medical services and treatment as a result of those injuries, and in reasonable probability will continue to incur such expenses into the future."   *Id.*   As a "direct and proximate result" of Defendants' decision to expel Terry, Jr. from school, and deny other educational services, Terry, Jr. has suffered psychological injuries including: "emotional pain and suffering, embarrassment, humiliation, stress, loss

of the opportunity to graduate and participate in graduation, loss of the enjoyment of life, and other harms." *Id.*   Additionally, as a "direct and proximate result of Defendants' acts and omissions," Mrs. Terry was forced to quit her job to home school Terry, Jr., and Mr. Edward J. Terry, Sr. ("Terry, Sr.") was forced to prematurely end his military assignment to help care for Terry, Jr.'s physical injuries.   *Id.*   As a result the Terry family experienced a loss of wages, training, and harm to their careers.   *See* Doc. 37 at 34-35.

## IV. DISCUSSION AND ANALYSIS

### A.   Standing

In the instant action, Plaintiffs present a running narrative of events against Defendants with regard to their claims of excessive force, assault and battery, failure to protect, false arrest, malicious prosecution, race discrimination in discipline and prosecution, denial of due process in juvenile criminal prosecution, denial and interference with rights to access of the courts, illegal search, denial of procedural due process, and denial of education and disability discrimination, all of which arose out of the verbal and physical altercation between Taylor and Terry, Jr.   *See* Doc. 37.   Upon review of the *Amended Complaint*, it is apparent to the Court that Plaintiffs Terry, Sr. and Mrs. Terry lack standing to bring any claims, except for an illegal search in violation of their Fourth Amendment rights.

Standing is a cornerstone of American jurisprudence on which jurisdiction lies. "[A] litigant may only assert his own constitutional rights or immunities."   *McGowan v.*

*State of Md.*, 366 U.S. 420, 429, 81 S. Ct. 1101, 1107, 6 L. Ed. 2d 393 (1961) (citing *United States v. Raines*, 362 U.S. 17, 22, 80 S. Ct. 519, 523, 4 L. Ed. 2d 524 (1960); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 218-19, 94 S. Ct. 2925, 2931, 41 L. Ed. 2d 706 (1974) (plaintiff must assert a legally cognizable injury in fact before federal courts have jurisdiction)).   "The essence of a standing question is whether the plaintiff has alleged 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for the illumination of difficult constitutional questions[.]'"   *Saladin v. City of Milledgeville*, 812 F.2d 687, 690 (11th Cir. 1987) (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S. Ct. 691, 703 7 L. Ed. 2d 663 (1962)); *see also Harris v. McRae*, 448 U.S. 297, 320, 100 S. Ct. 2671, 2689-90, 65 L. Ed. 2d 784 (1980).

Standing involves two aspects.   The first is the minimum "case or controversy" constitutional requirement of Article III.   *Saladin*, 812 F.2d at 690.   "To satisfy this 'irreducible' constitutional minimum required for standing, a litigant must show 1) that he personally has suffered an actual or prospective injury as a result of the putatively illegal conduct; 2) that the injury can be fairly traced to the challenged conduct; and 3) that the injury is likely to be redressed through court action."   *Saladin*, 812 F.2d at 690 (citing *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S. Ct. 752, 758, 70 L. Ed. 2d 700 (1982); *Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975)).   If any element is lacking, a plaintiff's claim is not viable.   In addition, the Supreme Court has established several requirements based on

prudential considerations.  *Saladin*, 812 F.2d at 690 (internal citations omitted) ("The Supreme Court has also stated that, in addition to these essential constitutional requirements, a court should consider the case in light of three principles which might counsel judicial constraint, referred to as 'prudential' considerations.[. . .]   Those considerations are 1) whether the plaintiff's complaint falls within the zone of interests protected by the statute or constitutional provision at issue; 2) whether the complaint raises abstract questions amounting to generalized grievances which are more appropriately resolved by the legislative branches; and 3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties").

The instant amended complaint contains several claims related to violations and/or denial of the constitutional rights of Terry, Jr.   In accordance with applicable federal law, Terry, Sr. and Mrs. Terry lack standing to assert the constitutional rights of another person.[4]  *Saladin*, 812 F.2d at 690.  The prudential limitation applicable in this case is that a litigant may not assert the legal rights or interests of another person.   With respect to the claims arising from alleged violations of Terry, Jr.'s constitutional rights (Counts One (1) through Ten (10), Twelve (12), and Thirteen (13)), Terry, Sr. and Mrs. Terry are not "asserting [their . . .] own legal rights and interests [but] rather [. . .] the legal rights and interests of third parties."  *Saladin*, 812 F.2d at 690.   These claims therefore entitle Terry,

---

4  Terry, Jr., over the age of nineteen (19) years old at the time of the filing of the instant action, is a named plaintiff in this case, and thus has standing to assert his legal rights on his own behalf.

Sr. and Mrs. Terry to no relief and are subject to dismissal as to them.[5]   The lone exception is Count Eleven (11) insofar as Plaintiffs assert that Defendants Russell County Department of Human Resources ("DHR") and Lizzie Thomas entered the Plaintiffs' home and conducted a warrantless search without Plaintiffs' permission in violation of their Fourth Amendment rights.

**B.     Statute of Limitations and Exhaustion of Administrative Remedies**

As previously stated, Plaintiffs present a running narrative of events against Defendants with regard to their claims of excessive force, assault and battery, failure to protect, false arrest, malicious prosecution, race discrimination in discipline and prosecution, denial of due process in juvenile criminal prosecution, denial and interference with rights to access of the courts, illegal search, denial of procedural due process, and denial of education and disability discrimination initially arising out of the verbal and physical altercation between Taylor and Terry, Jr.   *See* Doc. 37.   Plaintiffs assert that the initial encounter about which they complain occurred on November 14, 2011 and that additional related events occurred up and until April 16, 2013.

---

5 Plaintiffs assert that because Mrs. Terry had to quit her job to home school Terry, Jr., and Terry, Sr. had to prematurely end his military assignment to help care for Terry, Jr.'s physical injuries, they have suffered cognizable injuries.   *See* Doc. 81 at 21.   However, this is not a sufficient basis to assert the legal rights on behalf of a third party.   Plaintiffs also assert that because Terry, Sr. and Mrs. Terry were charged with harassment as a result of interactions with Defendants, they were subject to malicious prosecution, and thus, have standing in this case.   *See* Doc. 81 at 19-21.   While Plaintiffs assert a malicious prosecution claim under Counts Six (6) and Seven (7), it is only related to the prosecution of Terry, Jr. as a result of the physical altercation with Taylor.   *See* Doc. 37 at 43-44.   The *Amended Complaint* is void of any mention of harassment charges filed against Terry, Sr. and Mrs. Terry, thus it is not a claim properly before this Court.

i.      Title VII of the Civil Rights Act

While there is no express period of limitations in the Civil Rights Act, federal courts generally apply the most appropriate state statute of limitations to a claim filed under 42 U.S.C. § 1983.   *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 378, 124 S. Ct. 1836, 1842-43, 158 L. Ed. 2d 645 (2004) (citing *Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985)).   "Because section 1983 does not contain a statute of limitations, reference must be made to the limitation periods prescribed by the state in which the litigation arose."   *Majette v. O'Connor,* 811 F.2d 1416, 1419 (11th Cir. 1987). "[T]he most appropriate statute of limitations for all section 1983 actions is the personal injury statute of limitations of the state whose law is to be applied."   *Id.*; *see also Wilson v. Garcia,* 471 U.S. at 266-67, 105 S. Ct. at 1941-42; *Burnett v. Grattan,* 468 U.S. 42, 104 S. Ct. 2924, 82 L. Ed. 2d 36 (1984).

> Federal courts must look to state law to determine, first, what statute of limitations is applicable, and second, whether that limitations period is tolled. *Whitson v. Baker,* 755 F.2d 1406, 1409 (11th Cir. 1985). [. . .] Alabama law [ ] provides that the applicable limitations period is the one in effect when the claim is filed, not when the cause of action arose. *Tyson v. Johns Manville Sales Corp.,* 399 So. 2d 263, 269-70 (Ala. 1981).

*Dukes v. Smitherman,* 32 F.3d 535, 537 (11th Cir. 1994).   Alabama's general two year statute of limitations for personal injury actions is the most applicable to the instant § 1983 claims.   ALA. CODE § 6-2-38(l); *see Owens v. Okure,* 488 U.S. 235, 249-250, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989) (the proper statute of limitations for § 1983 actions is the

forum state's general or residual statute of limitations for personal injury actions); *see also Lufkin v. McCallum,* 956 F.2d 1104, 1105 (11th Cir. 1992).

While state law determines the applicable statute of limitations, "[f]ederal law determines when the statute of limitations begins to run." *Lovett v. Ray,* 327 F.3d 1181, 1182 (11th Cir. 2003). A § 1983 action accrues "from the date the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *See Brown v. Ga. Bd. of Pardons & Paroles,* 335 F.3d 1259, 1261 (11th Cir. 2003); *see also Walker v. United States,* 196 Fed. App'x 774, 776 (11th Cir. 2006) (explaining that "a cause of action accrues for purposes of the statute of limitations in § 1983 and *Bivens* cases when the plaintiff knows or has reason to know of an injury and who has inflicted it"); *Helton v. Clements,* 832 F.2d 332, 335 (5th Cir. 1987).

Under Alabama law, statutes of limitations are tolled in cases involving a plaintiff, who was a minor at the time of the alleged injury, until the time the minor reaches the age of nineteen (19) years old. *See* ALA. CODE § 6–2–8; *Bender v. Coram*, No. 2:14-CV-1583-KOB, 2015 WL 3385106, at *2 (N.D. Ala. May 26, 2015); *Smith v. Fannin*, No. 2:12CV1037-MHT, 2014 WL 3721453, at *2 (M.D. Ala. July 22, 2014). Here, Terry, Jr. was a minor at the time of the November 14, 2011 altercation, and did not reach the age of majority until January 4, 2013. Therefore, the relevant two-year statute of limitations was tolled until January 4, 2015. The *Complaint* (Doc. 1) in this action was filed on September 12, 2014 and Plaintiffs *Amended Motion* (Doc. 37) was filed on January 7, 2015

following the Court granting Plaintiffs' *Motion to Amend* (Doc. 35, filed December 31, 2014); thus, Terry, Jr.'s claims were brought within the two-year statute of limitations.[6]

Since Plaintiffs Terry, Sr. and Mrs. Terry were not minors at the time of the incident, the tolling provision of the Code of Alabama is not applicable to their sole remaining claim. On December 15, 2011, DHR entered the Plaintiffs' home and conducted a warrantless search without Plaintiffs' permission which is the basis for Plaintiffs claim that they were subjected to an illegal search in violation of their Fourth Amendment rights. *See* Doc. 37 at 50-51. Under the statute of limitations, Plaintiffs Terry, Sr. and MRs. Terry were required to file their claims on or before December 15, 2013. Consequently, it is clear that as to Plaintiffs Terry, Sr. and Mrs. Terry, Count Eleven (11) brought under § 1983 is barred by the two-year statute of limitations, and thus, due to be dismissed. Upon dismissal of their sole remaining claim, Edward J. Terry, Sr. and Dymphia Terry are due to be dismissed as Plaintiffs in this case.

ii.     *Title II of the ADA, IDEA, and Section 504 of the Rehabilitation Act*

Plaintiff Terry, Jr. also brings claims under IDEA, Title II of the ADA and Section 504 of the Rehabilitation Act stemming from Defendants denial of public education, and more specifically, denial of public special educational services to which Terry, Jr. is entitled. *See* Doc. 37 at 54. The Eleventh Circuit has held that "[b]ecause causes of action brought under Title II of the ADA and the Rehabilitation Act are essentially

---

6 Although Plaintiffs filed their *Amended Complaint* (Doc. 37) on January 7, 2015 which supersedes the initial *Complaint* (Doc. 1), the Court referred Plaintiffs to the Pro Se Assistance Program to assist the *pro se* plaintiffs with the drafting of an amended complaint; thus, the Court finds in the interest of fairness, the filing of Plaintiffs' *Amended Complaint* relates back to the time of filing the initial complaint in this case.

identical," the two statutes should be considered "simultaneously and apply the same statute of limitations to both." *Everett v. Cobb Cnty. Sch. Dist.*, 138 F.3d 1407, 1409 (11th Cir. 1998) (citing *Pottgen v. Missouri St. High Sch. Activities Ass'n,* 40 F.3d 926, 930 (8th Cir. 1994) (stating that interpretations of the ADA must be consistent with interpretations of the Rehabilitation Act)).

Similar to § 1983 claims, the ADA and Rehabilitation Act do not contain a statute of limitations provision; thus, "[w]here a federal statute does not contain a limitations period courts should look to the most analogous state statute of limitations." *Id.* (citing *Wilson,* 471 U.S. at 266–67, 105 S. Ct. at 1942). Where an action is brought under the ADA or Rehabilitation Act to "vindicate injuries to personal rights," the claims should be characterized as a civil rights action, and the Court "should apply the state's personal injury statute of limitations." *Id.*; *Andalusia City Bd. of Educ. v. Andress*, 916 F. Supp. 1179, 1184 (M.D. Ala. 1996) (citations omitted).  As such, Alabama's general two-year statute of limitations for personal injury actions is the most applicable to the ADA and Rehabilitation Act claims. *Ala. Code* § 6-2-38(l); *see also Owens,* 488 U.S. at 246, n. 9, 109 S. Ct. at 580 n. 9; *Jones v. Preuit & Mauldin,* 876 F.2d 1480, 1483 (11th Cir. 1989).

As previously discussed, under Alabama law, statutes of limitations are tolled in cases involving a plaintiff who was a minor at the time of the alleged injury, until the time the minor reaches the age of nineteen (19) years old.  *See* Ala. Code § 6–2–8; *Bender,* 2015 WL 3385106, at *2; *Smith*, 2014 WL 3721453, at *2.  Here, the initial denial of public special educational services triggered on November 17, 2011 when Plaintiff

received the expulsion letter from Superintendent Green where Terry, Jr. was referred to the ALC.   Terry, Jr. was a minor at the time of the November 17, 2011 expulsion, and did not reach the age of majority until January 4, 2013.   Therefore, the relevant two-year statute of limitations was tolled until January 4, 2015.   The *Complaint* (Doc. 1) in this action was filed on September 12, 2014 and Plaintiffs *Amended Complaint* (Doc. 37) was filed on January 7, 2015 following the Court granting Plaintiffs' *Motion to Amend* (Doc. 35, filed December 31, 2014); thus, Terry, Jr.'s claims were brought within the two-year statute of limitations.

The IDEA, on the other hand, has a much shorter statute of limitation period. The Eleventh Circuit has often applied a thirty day statute of limitation to "assure[s] prompt resolution of disputes over [individualized education plans] or for handicapped children.  *Andalusia City Bd. of Educ. v. Andress*, 916 F. Supp. 1179, 1182 (M.D. Ala. 1996) (quoting *JSK ex rel. JK & PGK v. Hendry County Sch. Bd.*, 941 F.2d 1563, 1570, n. 1 (11th Cir. 1991)); *See also* 20 U.S.C. §§ 1415(b)(2) & (c).   However, the IDEA first requires parties to exhaust all asserted claims under its administrative procedures with the state education agency prior to filing the claims in federal court:

> ... before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(*l* ).

Further, the Eleventh Circuit has held that "claims asserted under Section 504 and/or the ADA are subject to Section 1415(f)'s requirement that litigants exhaust the IDEA's administrative remedies to obtain relief that is available under the IDEA before bringing suit under Section 504 and/or the ADA."   *M.T.V. v. DeKalb Cnty. Sch. Dist.,* 446 F.3d 1153, 1159 (11th Cir. 2006) (holding claims brought under Section 504 of the Rehabilitation Act and the ADA subject to the IDEA exhaustion requirement); *Babicz v. Sch. Bd. of Broward Cnty.,* 135 F.3d 1420, 1422 n. 10 (11th Cir. 1998) (taking the issue on first impression, and holding "denial of publicly financed special education under Section 504 and the ADA [. . .] are subject to Section 1415(f)'s requirement that litigants exhaust the IDEA's administrative procedures to obtain relief that is available under the IDEA before bringing suit under Section 504 and/or the ADA.") (internal citations omitted). The Eleventh Circuit reached this holding in order to prevent a plaintiff from attempting to "circumvent the procedures provided by the IDEA merely by raising claims under another statute or seeking relief in federal court that the administrative agencies cannot grant." *Jennifer B. v. Chilton Cnty. Bd. of Educ.*, 891 F. Supp. 2d 1313, 1322 (M.D. Ala. 2012); *see also N.B. v. Alachua Cnty. Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996).   The Eleventh Circuit has provided two exceptions to the exhaustion requirement:

> (1) where resorting to administrative remedies would be futile and (2) where the available relief would be inadequate. *N.B.,* 84 F.3d at 1379; *M.T.V.,* 446 F.3d at 1159. The party seeking exemption from the exhaustion requirement bears the burden of demonstrating futility or inadequacy of relief. *M.T.V.,* 446 F.3d at 1159.

*Jennifer B.*, 891 F. Supp. 2d at 1322.

Here, based upon representations made by Defendants, Plaintiff has failed to exhaust his administrative remedies under the IDEA. Plaintiff has provided no documentation in either his amended complaint or response to the Defendants' motions to dismiss to show that he properly exhausted his administrative remedies under the IDEA protocol. Plaintiffs have also failed to meet their burden of proving that exhaustion would have been futile or the relief would have been inadequate. *See SK ex rel. JK & PGK*, 941 F.2d at 1570 (quoting *Department of Educ., State of Hawaii v. Carl D.*, 695 F.2d 1154, 1157 (9th Cir. 1983)) (discussing that the exhaustion requirement and the shortened statute of limitations is to "assure prompt resolution of disputes over [individualized education plans] or for handicapped children"). Thus, Plaintiff's IDEA, Title II of the ADA, and Section 504 of the Rehabilitation Act claims under Count Thirteen are due to be dismissed for failure to exhaust administrative remedies. Consequently, Defendants Vivian Relf (Director of Special Education), Ricky Martin (Director of ALP), and Jacqueline Grant (teacher in the ALP) are due to be dismissed as defendants because the only claims asserted against them were under the IDEA, ADA, and Rehabilitation Act.

## C.   **Immunity Challenges**

### i.   *Russell County Department of Human Resources*

Defendant Russell County DHR seeks dismissal on a number of grounds, but this court need only address their sovereign immunity challenge. *See* Doc. 63. The Eleventh Amendment states that "[t]he judicial power of the United States shall not be construed to

extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."   U.S. CONST. AMEND. XI; *see also Carr v. City of Florence,* 916 F.2d 1521, 1524 (11th Cir. 1990) ("Although the express language of the [Eleventh] [A]mendment does not bar suits against a state by its own citizens, the Supreme Court has held that an unconsenting state is immune from lawsuits brought in federal court by the state's own citizens.") (citing *Hans v. Louisiana*, 134 U.S. 1, 10, 10 S. Ct. 504, 505, 33 L. Ed. 842 (1890)).

Further, "[i]t is ... well-settled that Eleventh Amendment immunity bars suits brought in federal court when ... an 'arm of the State' is sued."   *Manders v. Lee,* 338 F.3d 1304, 1308 (11th Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S. Ct. 568, 572, 50 L. Ed. 2d 471 (1977)).   The Court's determination of "[w]hether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the action out of which liability is asserted to arise."   *Id.* (citing *Shands Teaching Hosp. & Clinics v. Beech St. Corp.,* 208 F.3d 1308, 1311 (11th Cir. 2000)); *see Ross v. State of Ala.*, 893 F. Supp. 1545, 1550 (M.D. Ala. 1995) (finding that Houston County DHR is a state agency for purposes of the Eleventh Amendment).   Prior state and federal court precedent establish that both Alabama DHR and county DHR offices in Alabama are entitled to sovereign immunity with respect to all forms of relief asserted against them, and are consequently due to be dismissed for lack of subject matter jurisdiction.   *See Ex parte Ala. Dep't. of Human Res.,* 999 So. 2d 891, 896 (Ala. 2008) (holding that Alabama DHR is entitled to sovereign

immunity under Alabama Constitution); *Kid's Care, Inc. v. State of Ala. Dep't of Human Res.,* No. 01–T–453–N, 2001 WL 35827965, at *1 (M.D. Ala. June 14, 2001) (finding that the Eleventh Amendment "bars all claims against [Alabama DHR] in federal court"); *see also Franklin Cnty. Dep't of Human Res.,* 674 So. 2d 1277, 1279 (Ala. 1996) (holding that county department of human resources is entitled to sovereign immunity under Alabama Constitution). Therefore, Defendant Russell County DHR's *motion to dismiss* is due to be granted, and all claims against Russell County DHR are due to be dismissed for lack of subject matter jurisdiction.

> ii.     *Lizzie Thomas, Russell County DHR Case Worker*

Defendant Thomas invokes the doctrine of qualified immunity in seeking dismissal of the individual capacity claims brought against her.  *See* Doc. 66.  The qualified immunity doctrine protects officials from the chilling effect that the fear of personal liability would create in carrying out their discretionary duties.  *See Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).  It immunizes "from suit all but the plainly incompetent or one who is knowingly violating the federal law."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001)).

Since qualified immunity is an affirmative defense, the "public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  *Lee*, 284 F.3d at 1194.  "To determine whether an official was engaged in a discretionary function," federal courts look to see whether the disputed acts

"fell within the employee's job responsibilities." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004) (internal citation omitted).   This inquiry does not ask "whether the act complained of was done for an improper purpose, but 'whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'"   *Plotkin v. United States*, 465 Fed. App'x 828, 831-32 (11th Cir. 2012) (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)).   The allegations here show that Thomas acted in her capacity as a case worker for Russell County DHR when she responded to a report of child abuse, interviewed Terry, Jr. about the presence of child abuse, and conducted an unannounced, warrantless search of the Terry household to search for evidence of child abuse or illegal activity.[78]   *See* ALA. CODE § 26–14–7 (1975) ("The investigation may include a visit to the child's home, an interview with the subject child, and may include a physical, psychological, or psychiatric examination of any child or children in that home.").   Thus, since the investigatory

---

7 Plaintiff also alleges that Thomas failed to protect him from the physical assault by Taylor.   Based upon Plaintiff's own facts, Defendant Thomas was not present at the time of the altercation, is not employed by the school; her office is at Russell County DHR; and she had never met Terry, Jr. until November 28, 2011, two weeks after the physical altercation took place.   Plaintiff has not cited to any affirmative duty, nor can the Court find one, which would make a DHR case worker liable for such an event.   Therefore, the Court finds this claim to be frivolous, and is due to be dismissed.

8 Thomas argues that the Eleventh Circuit has created an exemption to the general prohibition against referencing documents outside of the complaint, and attached an affidavit sworn by Thomas.   While Thomas is correct that the Eleventh Circuit has carved out an exception, the Court, however, "may consider the document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed."   *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *see also Universal Express, Inc. v. S.E.C.*, 177 Fed. App'x 52, 53 (11th Cir. 2006) (holding that "public records are among the permissible facts that a district court may consider" where submitted with a motion to dismiss.).   Here, Thomas submits a sworn affidavit.   It is clear to this Court that, an affidavit which attempts to rebut the facts as alleged by Plaintiff in his amended complaint, is not "undisputed;" thus the Court will not consider the testimony provided by Thomas in her affidavit.

activities are within the scope of a case worker's duties, there are sufficient allegations that she acted in a discretionary function.[9]

Once the defendant seeking qualified immunity shows that she acted in a discretionary capacity, the plaintiff must allege that qualified immunity should not apply. *Lee*, 284 F.3d at 1194.   To meet their burden, the plaintiff must satisfy the two-prong test established in *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001).   The first prong is whether the facts, taken in the light most favorable to the plaintiff, show the violation of a federal statutory or constitutional right.   *Id.*   The second prong is that "if a violation could be made out," the court must determine whether the right at issue was "clearly established."   *Id.*   In *Pearson v. Callahan*, the Supreme Court reconsidered the *Saucier* test and concluded that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." 555 U.S. 223, 224, 129 S. Ct. 808, 811, 172 L. Ed. 2d 565 (2009).   Instead, judges "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."   *Id.*

Here, Terry, Jr. must allege that Thomas violated one of his constitutional rights, and that the claimed right was clearly established when the challenged conduct occurred. *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011).   In

---

9 Plaintiff alleges that the child abuse report Thomas responded to was a false report initiated by Sheriff Taylor in an attempt to further interfere with Plaintiff's access to the courts.   However, it is not relevant at this point if the child abuse claim was true or false, that burden lies upon Sheriff Taylor. All that is relevant under this analysis is that Thomas received the complaint, and that her actions in response to that complaint were within her discretionary authority.

other words, the Court's determination on this claim is "whether *any* reasonable officer (that is, one without hostility toward Plaintiffs' religion or family) could have acted as [this Defendant] acted without violating federal law." *Foy v. Holston*, 94 F.3d 1528, 1536 (11th Cir. 1996) (emphasis in original). In *Lenz v. Winburn*, the Eleventh Circuit has already extended the qualified immunity defense where plaintiff alleged a Fourth Amendment illegal search when a case worker conducted a warrantless entry into their home. 51 F.3d 1540, 1551-52 (11th Cir. 1995). The *Lenz* court determined that the "[t]he Fourth Amendment prohibits only unreasonable searches. Unreasonableness is determined by a case-by-case balancing of the state's interests against the individual's." *Id.* at 551. The Court held that "the law of qualified immunity provides that [the case worker] need not predict whether the interest of the state in retrieving personal effects for a child's comfort will be deemed to outweigh the privacy interests of the suspected abusers. Neither must she err on the side of caution and assume that such searches are unreasonable." *Id.* (citing *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1150 (11th Cir. 1994)). Thus, the Eleventh Circuit affirmed the lower court's finding that the case worker was "entitled to qualified immunity from the claim based on her entry into the [plaintiffs'] house." *Id.* at 1551-52.

Therefore, the Court finds that Thomas' motion to dismiss is due to be granted, and all claims against her are due to be dismissed.

iii.    *Ken Davis, Russell County District Attorney*

Defendant D.A. Davis invokes the doctrine of absolute immunity in seeking dismissal of the individual capacity claims brought against him.    *See* Doc. 60. Prosecutors are entitled to "the same absolute immunity that the prosecutor enjoys at common law."    *Imbler v. Pachtman*, 424 U.S. 409, 427, 96 S. Ct. 984, 993, 47 L. Ed. 2d 128 (1976).    However, a prosecutor is not absolutely immune simply because he is a prosecutor nor are all of his actions covered.    *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S. Ct. 2606, 2615, 125 L. Ed. 2d 209 (1993).    Absolute immunity applies to "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State."    *Id.*; *Rivera v. Leal*, 359 F.3d 1350, 1353 (11th Cir. 2004) ("A prosecutor is entitled to absolute immunity for all actions he takes while performing his function as an advocate for the government."); *see also Van De Kamp v. Goldstein*, 555 U.S. 335, 335, 129 S. Ct. 855, 857, 172 L. Ed. 2d 706 (2009) ("Prosecutors are absolutely immune from liability in § 1983 suits brought against prosecutorial actions that are intimately associated with the judicial phase of the criminal process.") (citation omitted).

"Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made."    *Buckley*, 509 U.S. at 273, 113 S. Ct. at 2615.    Absolute immunity would not apply when a prosecutor is acting outside judicial proceedings, such as when a prosecutor gives advice to police during a criminal

investigation, when the prosecutor makes statements to the press, or when a prosecutor acts as a complaining witness in support of a warrant application.   *See Van De Kamp*, 555 U.S. at 342-43,129 S. Ct. at 861 (internal citations omitted).

Further, absolute immunity only applies to claims for monetary relief.   *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000).   Prosecutors do not enjoy absolute immunity from declaratory and injunctive relief claims.   *Id.* (quoting *Tarter v. Hury*, 646 F.2d 1010, 1012 (5th Cir. 1981)); *see also Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 736-38, 100 S. Ct. 1967, 1976-78, 64 L.Ed.2d 641 (1980) (prosecutors do not enjoy absolute immunity from claims for equitable relief).

The allegations here show that actions about which Plaintiff complains with respect to Defendant D.A. Davis arise from this defendant's role "as an 'advocate' for the state" and such actions are "intimately associated with the judicial phase of the criminal process." *Mastroianni v. Bowers,* 60 F.3d 671, 676 (11th Cir. 1998) (citations omitted).   D.A. Davis' decision to prosecution Terry, Jr. for his role in the physical altercation, subsequently *nolle prosequi* the charges against Terry, Jr.; not to prosecute Taylor for his role in the altercation; not to recuse himself; and to question Terry, Jr. about the physical altercation that took place between he and Taylor are all "actions [taken] while performing his function as an advocate for the government."   *Rivera*, 359 F.3d at 1353.   Defendant D.A. Ken Davis is, therefore, "entitled to absolute immunity for that conduct," and his motion to dismiss is due to be granted, and all claims against him are due to be dismissed. *Id.*

iv.     *Sheriff Heath Taylor and Deputy Sheriff Bob Atkin*

Defendants Sheriff Taylor and Deputy Sheriff Bob Atkin invoke the doctrine of sovereign immunity in seeking dismissal of the individual capacity state-law claims and the doctrine of qualified immunity in seeking dismissal of the individual capacity federal claims brought against them.   *See* Doc. 68.

a.      Sovereign Immunity

Defendants Sheriff Taylor and Deputy Atkin assert that Plaintiff's "state-tort claims for false arrest and malicious prosecution are due to be dismissed because these Defendants cannot be held liable for state law claims as a matter of law."   *See* Doc. 69 at 12.   The Eleventh Circuit held:

> "[U]nder Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity." *McMillian v. Johnson*, 101 F.3d 1363, 1365 (11th Cir. 1996) cert. denied, (June 27, 1997) (No. 96–1756). The source of absolute sovereign immunity is Article I, § 14 of the Alabama Constitution of 1901, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity." That provision bars any suit against the state of Alabama or its agencies. *See Phillips v. Thomas*, 555 So. 2d 81, 83 (Ala. 1989). That provision also grants immunity to state officers and employees in their official and individual capacities, when the action is, in reality, a suit against the state.   *See id.*

*Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (overruled on other grounds).   This holding has been extended to sheriff's deputies.   *See Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996) (citing *Phillips v. Thomas*, 555 So.2d 81, 83 (Ala. 1989) ("Under Alabama law, sheriffs and deputy sheriffs, in their official capacities and individually, are absolutely immune from suit when the action is, in effect, one against

the state").   The only exception to this rule is for "actions brought to *enjoin* the sheriff's conduct."   *Id.*   Since Sheriff Taylor and Deputy Atkin are being sued for damages, and not injunctive relief, they are both immune from suit from Plaintiff's state law tort claims of false arrest (Count Five) and malicious prosecution (Counts Six and Seven).   Therefore, Defendants Sherriff Taylor and Deputy Atkin's motion to dismiss is due to be granted as to Counts Five through Seven.

       b.     Qualified Immunity

Defendants Sheriff Taylor and Deputy Atkin invoke the doctrine of qualified immunity in seeking dismissal of the individual capacity federal claims brought against them.   As previously discussed in Subsection IV(C)(ii), first Defendants must show that they were engaged in a discretionary function.   *Crosby*, 394 F.3d at 1332 ("To determine whether an official was engaged in a discretionary function," federal courts look to see whether the disputed acts "fell within the employee's job responsibilities").   The allegations here show that Sheriff Taylor and Deputy Atkin acted in their capacity as the Russell County Sheriff and Sheriff's Deputy while questioning Terry, Jr. about the altercation with Taylor, Sheriff Taylor's refusal to recuse himself, and the filing of a report of potential child abuse with DHR.   Additionally, Plaintiff alleges that there was racial discrimination in the punishment levied, that Sheriff Taylor refused to recuse himself from the case in light of his brother being involved, that Sheriff Taylor likely advised Taylor of his ability to seek criminal charges against Terry, Jr., and the filing of those charges have stifled Terry, Jr.'s ability to seek a criminal warrant against Taylor.   However, as

previously stated, this inquiry does not ask "whether the act complained of was done for an improper purpose, but 'whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Plotkin v. United States*, 465 Fed. App'x 828, 831-32 (11th Cir. 2012) (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)).   Thus, since the activities are within the scope of a sheriff and sheriff's deputy's duties, there are sufficient allegations that they acted in a discretionary function.

Once the defendant seeking qualified immunity shows that he acted in a discretionary capacity, the plaintiff must allege that qualified immunity should not apply. *Lee*, 284 F.3d at 1194.   Here, Terry, Jr. must allege that Sheriff Taylor and Deputy Atkin violated one of his constitutional rights, and that the claimed right was clearly established when the challenged conduct occurred.   *al-Kidd*, 563 U.S. 731, 131 S. Ct. at 2080.   In other words, Terry, Jr.'s complaint must allege that when Sheriff Taylor and Deputy Atkin acted, "the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful."   *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993).

### 1.   Failure to Protect (Substantive Due Process)

First, Plaintiff alleges that Sheriff Taylor failed to protect him from the physical assault by Taylor, and to provide a safe environment to attend school.   Based upon Plaintiff's own facts, Defendant Sheriff Taylor was not involved in the altercation with Terry, Jr., was not present at the time of the altercation, nor is he employed by the school.

Plaintiff has not cited to any affirmative duty, nor can the Court find one, which would make a sheriff liable for such an event.   Therefore, the Court finds that Count Four as to Sheriff Taylor is frivolous, and is due to be dismissed because there is no clearly established law which would have given the Defendant fair warning that he could be held liable for such actions.

## 2. Race Discrimination in Discipline and Prosecution (Equal Protection)

Plaintiff alleges that his punishment following the physical altercation was a result of racial discrimination.   *See* Doc. 37 at 44-46.   Although Plaintiff names Sheriff Taylor and Deputy Atkins under Count Eight, he has wholly failed to plead any facts to support an Equal Protection violation against Sheriff Taylor or Deputy Atkin.   Plaintiff's allegations involve Russell County High School suspending and indefinitely expelling Terry, Jr. for the altercation even though Caucasian students faced very minor discipline, if any; Caucasian teachers not being sent home from work where under similar circumstances African-American teachers are sent home; D.A. Davis refusing to prosecute Taylor, but prosecuting Terry, Jr.; and Superintendent Green admitting that Terry, Jr. was disciplined for being an African-American male in the South, while not disciplining Taylor who is Caucasian.   *Id.*   However, none of these allegations include actions taken by Sheriff Taylor or Deputy Atkin.   The only instance these Defendants were mentioned under Count Eight is where Plaintiff avers multiple defendants "filed and prosecuted a false criminal charge against [Terry, Jr.], based on false and fabricated evidence, and

notwithstanding the same contradictory video recorded evidence that demonstrated he had not committed the crime charged." *See* Doc. 37 at 44.   It is undisputed that Taylor sought the criminal warrant from the Russell County Warrant Magistrate's office; D.A. Davis prosecuted Terry, Jr.'s criminal case; the magistrate refused to issue a criminal warrant on Taylor; and D.A. Davis refused to prosecute Taylor.   Plaintiff has failed to allege facts sufficient to show that Sheriff Taylor and/or Deputy Atkin were in any way involved in any discriminatory behavior.   Defendants correctly assert that the "alleged harm suffered by a plaintiff must be 'concrete and actual or imminent' rather than 'conjectural or hypothetical.'"  *See* Doc. 69 at 9 (citing *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008); *see also Miccosukee Tribe of Indians of Florida v. Florida State Athletic Comm'n*, 226 F.3d 1226, 1229 (11th Cir. 2000) ("An allegation of an abstract injury will not suffice").   Therefore, the Court finds that Count Eight as to Sheriff Taylor and Deputy Atkin is due to be dismissed because there is no clearly established law which would have given the Defendants fair warning that they could be held liable for such actions.

### 3.   Denial of Due Process in the Juvenile Criminal Prosecution

Plaintiff alleges that immediately following the physical altercation with Taylor, Sheriff Taylor sent Deputy Atkin to Russell County High School to take over the investigation from Sheriff's Deputy Parham, the Resource Officer assigned to the high school.   Deputy Atkin began interrogating Terry, Jr. while still on school grounds. Deputy Atkin failed to read Terry, Jr. his *Miranda* rights, and Terry, Jr. was refused access

to speak with his parents prior to answering questions, despite Mrs. Terry's presence at the

school.   With the facts that are currently under advisement, the Court is unable to make

any determination as to whether Terry, Jr. was in custody or otherwise detained in order to

make a ruling on the alleged violation of Terry, Jr.'s *Miranda* rights.   Similarly, while

there does not appear to be an affirmative right for a juvenile to have his parent present

during an interrogation, the Supreme Court has held:

> Where the age and experience of a juvenile indicate that his request for his
> probation officer or his parents is, in fact, an invocation of his right to remain
> silent, the totality approach will allow the court the necessary flexibility to
> take this into account in making a waiver determination. At the same time,
> that approach refrains from imposing rigid restraints on police and courts in
> dealing with an experienced older juvenile with an extensive prior record
> who knowingly and intelligently waives his Fifth Amendment rights and
> voluntarily consents to interrogation.

*Fare v. Michael C.*, 442 U.S. 707, 725-26, 99 S. Ct. 2560, 2572, 61 L. Ed. 2d 197 (1979).

Thus, out of an abundance of caution Defendants Sheriff Taylor and Deputy Atkin's

motion to dismiss is due to be denied with respect to Count Nine.

### 4.   Denial of and Interference with Right to Access Court

Plaintiff alleges that Sheriff Taylor and Deputy Atkin conspired with other

Defendants to preempt Terry, Jr.'s filing of criminal charges against Taylor, thus, denying

and interfering with is right to access to the courts.   Specifically, Plaintiff alleges that

Sheriff Taylor and Deputy Atkin advised Taylor to file criminal charges against Terry, Jr.

in order to prevent Terry, Jr. from doing the same.   However, Plaintiff "does not have a

constitutional right to see his alleged persecutors punished for their conduct."   *Robinson v.*

*Conner*, No. 2:12-CV-397-TMH, 2012 WL 2358955, at *1 (M.D. Ala. May 31, 2012) *report and recommendation adopted*, No. 2:12CV397-TMH, 2012 WL 2359879 (M.D. Ala. June 20, 2012).   "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S. Ct. 1146, 1149, 35 L. Ed. 2d 536 (1973); *see also Leeke v. Timmerman*, 454 U.S. 83, 85, 102 S. Ct. 69, 70, 70 L. Ed. 2d 65 (1981).   Therefore, the Court finds that Count Ten as to Sheriff Taylor and Deputy Atkin is due to be dismissed because there is no clearly established law which would have given the Defendants fair warning that they could be held liable for such actions.

   *v.* *Educational Professionals*

  Plaintiff also names the Russell County Board of Education ("Board of Education"); elected members of the Board of Education: Keith Mitchell, Kenneth Barnes, Jerry Wayne Carpenter, Dillie Elliot, Larry Laney, Eugenia Upshaw, Joseph Williams, Tommy Pugh, and Charles Johnson (collectively "Board members"); teacher Shawn Taylor; Superintendent Green; Principal Davis; and Assistant Principal Kirby.   *See* Doc. 37 at 2-4.   The elected members of the Board of Education, Taylor, and Superintendent Green are sued in both their official and individual capacities; the remaining defendants are sued only in their individual capacities.   *Id.*

   a. Official Capacity Claims

  Since Plaintiff has named the Russell County Board of Education as a defendant in this case, insofar as Plaintiff has named the elected member of the Board of Education, the

superintendent, and a teacher in their official capacities, the claims are redundant and due to be dismissed.   *See Walton ex rel. R.W. v. Montgomery Cnty. Bd. of Educ.*, 371 F. Supp. 2d 1318, 1324 (M.D. Ala. 2005); *Godby v. Montgomery County Bd. of Educ.,* 996 F. Supp. 1390, 1403 (M.D. Ala. 1998) (finding that claims against officers, including principal and teachers, in their official capacities are redundant of claims against the Board); *Palmer v. Perry County Board of Education,* 496 So. 2d 2, 5 (Ala. 1986) (school board members in official capacity are immune on the basis of sovereign immunity); *Hickman v. Dothan City Board of Education,* 421 So. 2d 1257, 1259 (Ala. 1982) (school board employees are entitled to sovereign immunity in their representative capacities).   Thus, the official capacity claims against Keith Mitchell, Kenneth Barnes, Jerry Wayne Carpenter, Dillie Elliot, Larry Laney, Eugenia Upshaw, Joseph Williams, Tommy Pugh, Charles Johnson, Shawn Taylor, and Mike Green are due to be dismissed.

### b.      Excessive Force (Substantive Due Process)

Plaintiff asserts that Taylor's use of physical force upon Terry, Jr. amounted to excessive force.   *See* Doc. 37 at 35-40.   Plaintiff asserts that the Board of Education, the Board members, Superintendent Green, Principal Davis, and Assistant Principal Kirby failed to adopt a policy with regard to discipline of students in violation of the ALA. CODE § 16-1-14, and that they failed to train their employees on use of physical restraint in violation of ALA. ADMIN. CODE § 290-3-1-.02(1)(f).   Further, Plaintiff asserts that he Board of Education, the Board members, Superintendent Green, Principal Davis, and Assistant Principal Kirby knew or should have known about Taylor's history with the use

of force considering Taylor's alleged past violent criminal history, and that their willful disregard amounted to deliberate indifference to the rights and safety of public school students. *Id.*

Defendants argue that they are entitled to qualified immunity on all claims against Defendants in their individual capacity. *See* Doc. 91. Since student discipline, setting policies, and training employees would be functions within the scope the Defendants' duties, there are sufficient allegations that they acted in a discretionary function. Once the defendant seeking qualified immunity shows that he acted in a discretionary capacity, the plaintiff must allege that qualified immunity should not apply. *Lee*, 284 F.3d at 1194. Here, Terry, Jr. must allege that Defendants violated one of his constitutional rights, and that the claimed right was clearly established when the challenged conduct occurred. *al-Kidd*, 563 U.S. 731, 131 S. Ct. at 2080. In other words, Terry, Jr.'s complaint must allege that when Defendants acted, "the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful." *Post*, 7 F.3d at 1557.

Plaintiff cites to *Neal ex rel. Neal v. Fulton County Board of Education* as the controlling case on this issue; the Court agrees. 229 F.3d 1069 (11th Cir. 2000). In *Neal*, the case involved a high school student and football player who was hit by the football coach, who was also a teacher, with a weight lock causing severe injury. *Id.* The plaintiff in *Neal* filed a substantive due process claim to be free from corporal punishment under § 1983 against the teacher, school board, superintendent, and principal. *Id.* First

the Eleventh Circuit analyzed whether the coach's conduct constituted corporal punishment and provided that "corporal punishment" is defined as "[p]hysical punishment as distinguished from pecuniary punishment or a fine; any kind of punishment inflicted on the body." *Id.* at 1072 (quoting *Black's Law Dictionary* 235-36 (6th ed. 1991). The Circuit noted that "[m]any corporal punishment cases involve what might be called traditional applications of physical force." [10] [11]   *Id.*   One consideration the Circuit examined was that the teacher was "was spurred to act by Plaintiff's misconduct on school premises."   The Eleventh Circuit determined that it was not a "case where a teacher used reasonable force to restore order in the face of a school disturbance and merely shoved or grabbed fighting students to separate them," and held that the force used by the teacher constituted corporal punishment.   *Id.* at 1072-73.

Like the coach/teacher in *Neal*, Taylor "was spurred to act by Plaintiff's misconduct on school premises," and it was clear his intent was to discipline Terry, Jr. for his failure to promptly leave the classroom and for his use of profanity.   While the physical force used by Taylor does not rise to the level used in *Neal*, reading the amended complaint in the light

---

10 Citing *London v. Directors of DeWitt Pub. Schs.*, 194 F.3d 873, 875 (8th Cir. 1999) (school official's acts of dragging student across room and banging student's head against metal pole described as corporal punishment); *P.B. v. Koch*, 96 F.3d 1298, 1300 (9th Cir. 1996) (school principal's conduct in hitting student in mouth, grabbing and squeezing student's neck, punching student in chest, and throwing student headfirst into lockers was corporal punishment actionable as a constitutional violation); *Metzger v. Osbeck*, 841 F.2d 518, 519–20 (3d Cir. 1988) (school official's conduct consisting of grabbing student in chokehold and causing student to lose consciousness and fall to the pavement resulting in student breaking his nose and fracturing teeth analyzed under corporal punishment framework); *Carestio v. School Bd. of Broward County*, 79 F. Supp. 2d 1347, 1348 (S.D. Fla. 1999) (school employees' conduct in ganging up on student and beating him described as corporal punishment); and *Gaither v. Barron*, 924 F. Supp. 134, 135–36 (M.D. Ala. 1996) (teacher's head-butting of student described as corporal punishment).

11 Thus, this Court construes Plaintiff's excessive force claim to be synonymous with corporal punishment.

most favorable to the Plaintiff, the force used by Taylor could be found by a trier of fact to constitute corporal punishment.

Next, the *Neal* court discussed the former Fifth Circuit's ruling that corporal punishment "may never give rise to a substantive due process claims."   229 F.3d at 1073 (citing *Ingraham v. Wright*, 430 F.2d 909, 916 (5th Cir. 1976).   The Eleventh Circuit distinguished the facts under *Neal* from the former Fifth Circuit's holding insofar as in *Ingraham*, it dealt with a former school policy allowing corporal punishment in the form of spanking students.   *Id.* at 1073-74.   In *Neal*, as is the case here, the Eleventh Circuit determined that the teacher "was not expressly authorized by school officials to administer the corporal punishment he allegedly inflicted upon Plaintiff" but rather he "summarily and arbitrarily punished Plaintiff (a student)."   *Id.* at 1074.   Similarly, Taylor was not authorized by school officials or policy to engage in the physical attack on Terry, Jr.; thus Plaintiff's substantive due process claim is properly before the Court.

Finally, the Eleventh Circuit turned its focus to determine whether the plaintiff in *Neal* stated a cause of action.   The Eleventh Circuit stated:

> The substantive component of the Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins*, 503 U.S. at 125, 112 S.Ct. at 1068 (quoting *Daniels v. Williams*, 474 U.S. 327, 331, 106 S. Ct. 662, 665, 88 L. Ed. 2d 662, 668 (1986)). "[T]he substantive component of the due process clause is violated by [state conduct] when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *County of Sacramento*, 523 U.S. at 847, 118 S. Ct. at 1717 (citation omitted). The concept of conscience-shocking duplicates no traditional category of common law fault, but "points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability."

> *Id.* That is to say, "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849, 118 S. Ct. at 1718.

*Id.* at 1074.   For a plaintiff to properly state a corporal punishment claim, they must allege "(1) a school official intentionally used an amount of force that was obviously excessive under the circumstances, and (2) the force used presented a reasonably foreseeable risk of serious bodily injury." *Id.* at 1075 (citations omitted).   "In determining whether the amount of force used is obviously excessive, we consider the totality of the circumstances."   *Id.*   The courts must examine "(1) the need for the application of corporal punishment, (2) the relationship between the need and amount of punishment administered, and (3) the extent of the injury inflicted." *Id.* at 1075-76 (citing *Metzger,* 841 F.2d at 520 ("In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.")).

Here, reading the amended complaint in a light most favorable to the Plaintiff, upon Terry, Jr. being referred to the Principal's office due to a misunderstanding, Taylor pushed Terry, Jr. out of the classroom for not moving fast enough, and with enough force that Terry, Jr. stumbled across the school's hallway, then taunted Terry, Jr. by saying "now what."   *See* Doc. 37 at 7.   Terry, Jr. turned to face Taylor as Taylor was quickly approaching and pushed Taylor away from his person.   At this point Taylor rushed Terry,

Jr. and slammed him into the wall.   *Id.*   Taylor then grabbed Terry, Jr. by the throat and began to forcefully choke Terry, Jr.   *Id.*   Still choking Terry, Jr., Taylor spun him around off of the wall and into the open hallway, and when Terry, Jr. attempted to defending himself, Taylor "bum-rushed" him down the hall and slammed Terry, Jr. on the ground, landing on top of him.   *Id.*   With Terry, Jr. pinned on the ground by a much larger Taylor, Taylor continued to choke Terry, Jr. to the point he was struggling to breathe and unable to tell Taylor he could not breathe.   *Id.*   Eventually, other teachers rushed to pull Taylor off of Terry, Jr. at which point he kicked a defenseless Terry, Jr. and yelled "I'm going to beat you within an inch of your life!"   *Id.* at 8.   In light of the facts presented, the Court concludes that Taylor "intentionally us[ed] an obviously excessive amount of force that presented a reasonably foreseeable risk of serious bodily injury."   *Neal*, 229 F.3d at 1076. Therefore, the Court finds that Plaintiff has alleged sufficient facts to show that Defendants violated one of his constitutional rights, and that the claimed right was clearly established when the challenged conduct occurred.

### c.   Denial of Procedural Due Process

Plaintiff asserts that the Board of Education, Board members, Superintendent Green, and Principal Davis violated his right to procedural due process with respect to his disciplinary hearing and his indefinite expulsion.   *See* Doc. 37 at 51-53.   Plaintiff alleges that since he was facing expulsion and then ultimately expelled indefinitely, he was "entitled to a greater procedural protection than if he was only facing a suspension."   *Id.* Defendants aver that they are entitled to qualified immunity in their individual capacities.

Specifically Defendants argue that they "clearly acted within their discretionary authority, since disciplining students is a legitimate discretionary function performed by teachers and principals. [. . .] School Board members similarly exercise discretionary functions when dealing with the suspension or expulsion of a student." *See* Doc. 91 at 8.  The Court agrees.  It is clear that all of the Defendants were engaged in a discretionary function while taking actions relevant to Terry, Jr.'s discipline, suspension, and indefinite expulsion.

Citing *L.Q.A. By & Through Arrington v. Eberhart* ("*Arrington*"), Defendants argue that "Plaintiff can point to no case that clearly establishes the precise procedures which should be done before, during or after a student commits a disciplinary violation and is suspended or expelled from a school."  920 F. Supp. 1208, 1228 (M.D. Ala. 1996) *aff'd sub nom. L.Q.A. v. Eberhart*, 111 F.3d 897 (11th Cir. 1997).   However, the facts as alleged in the Plaintiff's amended complaint are distinguishable from *Arrington* for several reasons.   The Court in *Arrington* recognized that there is a heightened duty to due process that must be applied when a student is at risk of expulsion.  *Id.* at 1217 (citing *Lamb v. Panhandle Community Unit School Dist. No. 2*, 826 F.2d 526, 528 (7th Cir. 1987); *Keough v. Tate County Bd. of Educ.*, 748 F.2d 1077, 1081 (5th Cir. 1984)).   The Court discussed that the student was required to receive notice and that "[t]he notice should contain a statement of the specific charges and grounds which, if proven, would justify expulsion under the regulations of the board of education. The nature of the hearing should vary depending upon the circumstances of the particular case."  *Id.* at 1217 (quoting *Dixon v.*

Page **43** of **58**

*Alabama State Board of Education*, 294 F.2d 150 (5th Cir. 1961), *cert. denied*, 368 U.S. 930, 82 S. Ct. 368, 7 L. Ed. 2d 193 (1961)).

The *Arrington* court discussed the Eleventh Circuit holding that "'there are no hard and fast rules by which to measure meaningful notice,'" and that there is no constitutional requirement that a student facing expulsion must receive "anymore in the way of notice than a statement of the charge against them." 920 F. Supp. at 1219 (quoting *Nash v. Auburn University*, 812 F.2d 655, 661 (11th Cir. 1987)).   The Supreme Court has stated "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (quoting *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976); *see also Nash,* 812 F.2d at 660 (The process that is due is determined by a "flexible standard that depends on the practical requirements of the circumstances.")).   The Court ultimately held that the student's procedural due process rights were not violated because he and his parents received multiple notices of the initial hearing and the subsequent hearing; the notices contained the charge against the plaintiff, although it did not provide the exact code citation; they were "advised on each occasion of their right to be represented by counsel and to present witnesses and evidence on the plaintiff's behalf;" they, in fact, had an attorney present at all suspension and expulsion proceedings; they were advised of the names of the witnesses against the plaintiff and the substance of the statements made by each witness; had the opportunity to cross-examine the witnesses in one of the hearings; and the plaintiff was able to present his defense before a three-judge panel.      *Id* at 1218-19.

Here, reading the amended complaint in a light most favorable to the Plaintiff, the case at bar presents the exact opposite factual account of the disciplinary hearing.   The Plaintiff did not receive written notice of the hearing which included the charges against him; instead the Plaintiff's parents received a telephone call the day before the hearing advising them of the time and location.   *See* Doc. 37 at 14.   Plaintiff was not advised of the names of the witnesses or the substance of the statements made by the witnesses, nor was he advised of the ability to be represented at the hearing.   *Id.*   Additionally, he was not advised of his ability to call witnesses or submit affidavits or other evidence in support of his defense, nor was he given the opportunity to present a defense before the hearing tribunal.   *Id.*   Similarly, the panel did not call any witnesses, or discuss the affidavit testimony in the hearing, nor did the tribunal review the video evidence supporting Plaintiff's defense.   *Id.*   Finally, the hearing tribunal failed to reach a decision, and the decision was ultimately made by Superintendent Green who was not a panel member nor was he present during the disciplinary hearing.   *See* Doc. 37 at 14-15.

It is clear to this Court that this case is distinguishable from *Arrington*, and thus, Defendants' argument fails.   Therefore, the Court finds that Plaintiff has alleged sufficient facts to show that Defendants violated one of his constitutional rights, and that the claimed right was clearly established when the challenged conduct occurred.

### d.      Failure to Protect (Substantive Due Process)

Plaintiff alleges that Defendants failed to protect him from the violent acts of his teacher, and failed to provide him with a safe environment in which to attend school, and

thus violated his substantive due process rights under the Due Process Clause of the Fourteenth Amendment. *See* Doc. 37 at 41. Defendants, again, assert they should be protected by qualified immunity; however, they do not provide any argument specifically related to this issue. It has already been determined that the Defendants were engaged in a discretionary function surrounding the events in this case; thus, the Court must determine "whether the alleged facts, if true, would amount to a constitutional violation. As a general rule, to prevail on a claim of a substantive due-process violation, a plaintiff must prove that a defendant's conduct "shocks the conscience." *Nix v. Franklin Cnty. Sch. Dist.,* 311 F.3d 1373, 1377 (11th Cir. 2002).

"[T]he Due Process Clause was intended to prevent government officials from abusing their power, or employing it as an instrument of oppression." *County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) (internal quotations and citations omitted). Substantive due process "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights,* 503 U.S. 115, 125, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992) (quoting *Daniels v. Williams,* 474 U.S. 327, 331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)). "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 195, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989). On the other hand, "[c]onduct by a government actor will rise to the level of a substantive due process violation only if the act

can be characterized as arbitrary or conscience-shocking in a constitutional sense." *Davis v. Carter,* 555 F.3d 979, 982 (11th Cir. 2009) (citing *Lewis,* 523 U.S. at 847, 118 S. Ct. 1708). The conscience-shocking determination "duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability." *Lewis,* 523 U.S. at 848, 118 S. Ct. 1708. Accordingly, the Supreme Court has "made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm, ... [nor is] the Fourteenth Amendment ... a 'font of tort law to be superimposed upon whatever systems may already be administered by the States.'" *Id.* (internal citations omitted). In analyzing the conscience-shocking standard, courts have determined that "negligent[ ] infliction of harm" does not rise to the level of conscience-shocking. *Id.* at 848–49, 118 S. Ct. 1708. Instead, it has been held that to support a substantive due process claim, the questionable conduct must be "conduct intended to injure in some way unjustifiable by any government interest." *Id.*

In *Davis v. Carter*, the Eleventh Circuit stated that the Court has only found conscience-shocking conduct in a school setting sustainable in two cases, both of which involved corporal punishment. 555 F.3d 979, 982 (11th Cir. 2009). The first case has already been discussed at length above. In *Neal*, a football coach attempted to break up a fight between students, and ultimately hit one of the students in the head with a metal weight lock, knocking the student's eye out of his socket. 229 F.3d at 1076. As previously quoted, the Court held the coach "intentionally us[ed] an obviously excessive

amount of force that presented a reasonably foreseeable risk of serious bodily injury."   *Id.* at 1076.   The second case, *Kirkland v. Greene County Board of Education,* the school principal struck a student multiple times with a metal cane as a disciplinary method.   347 F.3d 903 (11th Cir. 2003).   "Both *Neal* and *Kirkland* involved direct, intentional physical abuse by a state actor that resulted in immediate and severe physical injuries to a student." *Moore v. Chilton Cnty. Bd. of Educ.*, 936 F. Supp. 2d 1300, 1311 (M.D. Ala. 2013).

The Court incorporates by reference its discussion and finding of Plaintiff's corporal punishment claim under subsection IV(C)(v)(b).   Similar to *Neal* and *Kirkland*, this case involves a "direct, intentional physical abuse by a state actor that resulted in immediate and severe physical injuries to a student."   *Moore*, 936 F. Supp. 2d at 1311. Therefore, the Court finds that Plaintiff has alleged sufficient facts to show that Defendants violated one of his constitutional rights, and that the claimed right was clearly established when the challenged conduct occurred.

<u>e.      Racial Discrimination in Discipline</u>

Plaintiff alleges that that he was subjected to racial discrimination in the discipline levied by the Board members and school's administration.   *See* Doc. 37 at 44-45. Specifically, Plaintiff states that his Class III disciplinary charge for disorderly conduct toward a school board employee was based on false and fabricated evidence.   Thus, Plaintiff argues that the basis for his Class III disorderly conduct charge was for his use of vulgarity in which Caucasian students at Russell County High School

(a) were not criminally charged for using profanity toward a school employee; (b) faced disciplinary charges, if any, of only the less serious Class II offense of 'profanity or vulgarity' for use of profanity toward a school employee; (c) received discipline, if any, for using profanity of only a short suspension from school (rather than being expelled, as [Terry, Jr.] was; and (d) frequently were not even subjected to any disciplinary charger, and received no discipline, for using profanity toward school employees, as [Plaintiff's mother] Mrs. Terry had personally observed.

*See* Doc. 37 at 45.   Similarly, Plaintiff argues that he was disciplined, while Taylor, who is Caucasian, was not disciplined at all, and that the administrators often sent African-American teachers home immediately or had them arrested for either similar conduct or less severe conduct than that of Taylor in this incident.   *Id.*

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike."   *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S. Ct. 3249, 3253–54, 87 L. Ed. 2d 313 (1985); *Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1177 (11th Cir. 1993).   "Thus, the first step in an equal protection case is determining whether the plaintiff has demonstrated that she was treated differently than others who were similarly situated to [him]." *Klinger v. Department of Corrections,* 31 F.3d 727, 731 (8th Cir. 1994), *cert. denied,* 513 U.S. 1185, 115 S. Ct. 1177, 130 L. Ed. 2d 1130 (1995).   Terry, Jr. cannot surmount this primary hurdle.   While it is Plaintiff's assertion that Terry, Jr. should only have been disciplined for profanity, it is undisputed that what Terry, Jr. was actually disciplined for was the physical altercation with Taylor (assault), in addition to his use of profanity (disorderly conduct).   Plaintiff alleges the evidence will show that Taylor was solely at fault for the

physical altercation, and thus, all Terry, Jr. is at fault for is his use of profanity, which is a Class II disciplinary charge.   The comparator, however, would still be a Caucasian student who used profanity and was in a physical altercation with a teacher and did not receive Class III disciplinary charges for assault and disorderly conduct toward a school board employee.

Plaintiff has only asserted that Caucasian students who use profanity are rarely ever formally disciplined, and that African-American teachers are punished more severely than Taylor for less severe conduct.   Plaintiff has failed to "demonstrate[] that [he] was treated differently than others who were similarly situated to [him]."   *Id.*   He has failed to show, for instance, that Defendants treated him differently than Caucasian students who have used profanity and engaged in a physical altercation with a teacher.   Therefore, the Court finds that Plaintiff has not alleged sufficient facts to show that Defendants violated one of his constitutional rights, and that the claimed right was clearly established when the challenged conduct occurred; and thus Defendants' motion to dismiss is due to be granted as to Count Eight.

vi.   *Remaining Claims Against Shawn Taylor*

a.   Denial of and Interference with Right to Access Court

Plaintiff alleges that Taylor conspired with other Defendants to preempt Terry, Jr.'s filing of criminal charges against Taylor, thus, denying and interfering with his right to access to the courts.   Specifically, Plaintiff alleges that Taylor, on the advice of Sheriff Taylor and Deputy Atkins, filed criminal charges against Terry, Jr. in order to prevent

Terry, Jr. from doing the same.   However, Plaintiff "does not have a constitutional right to see his alleged persecutors punished for their conduct."   *Robinson*, 2012 WL 2358955, at *1.   "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *See Linda R.S.,* 410 U.S. at 619, 93 S. Ct. at 1149; *see also Leeke*, 454 U.S. at 85, 102 S. Ct. at 70.   Therefore, the Court finds that Count Ten as to Taylor is due to be dismissed because there is no clearly established law which would have given the Defendants fair warning that they could be held liable for such actions.

### b.   False Arrest

Plaintiff alleges that Taylor filed a false criminal complaint against him to impede or interfere with Terry, Jr.'s ability to file a criminal complaint against Taylor.   *See* Doc. 37 at 42-43. Plaintiff was prosecuted for the criminal complaint filed by Taylor; however, it was eventually *nolle prossed*.   Plaintiff alleges the filing of the false criminal complaint without probable cause amounts to a false arrest.   However, it is undisputed that Terry, Jr. was never arrested in connection with this matter.   Therefore, this claim is due to be dismissed as frivolous.

### c.   Assault and Battery

Plaintiff asserts that Taylor's "conduct constitute[s] assault and battery under Alabama law." *See* Doc. 37 at 40-41.   Further, Plaintiff states that Taylor's use of force "[was] outside his discretionary authority, based on mistaken interpretation of the law, willful, done with actual malice, fraudulent, and/or in bad faith." *Id.*   Under Alabama law, assault is defined as "'an intentional, unlawful offer to touch the person of another in a

rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented.'"   *Wright v. Wright*, 654 So. 2d 542, 544 (Ala. 1995) (quoting *Allen v. Walker*, 569 So. 2d 350, 351 (Ala. 1990)).   A battery is a successful assault, and consists of touching another in a hostile manner. *Surrency v. Harbison*, 489 So. 2d 1097, 1104 (Ala. 1986).

Defendant asserts that as a state law claim, it is due to be dismissed under the doctrine of state-agent immunity.   *See* Doc. 91 at 5.   Defendant asserts that a "state agent may enjoy immunity for, among other things, 'exercising judgment in the discharge of duties imposed by statute, rule, or regulation in [. . .] educating students.'"   *Id.* (quoting *Ex Parte Butts*, 775 So. 2d 173, 177-78 (Ala. 2000).   Defendant, correctly, asserts that he was "engaged in a function for which state-agent immunity is available, 'the burden [] shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority.'"   *Id.* (quoting *Giambrone v. Douglas*, 874 So. 2d 1046, 1052 (Ala. 2003).

The Court incorporates by reference its discussion of the events that transpired while discussing Plaintiff's corporal punishment claim under subsection IV(C)(v)(b). Reading the amended complaint in the light most favorable to the Plaintiff, Plaintiff has asserted sufficient facts to show that Taylor acted "willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority."   *Giambrone*, 874 So. 2d at 1052.   Therefore, the Court finds that Plaintiff has alleged sufficient facts to show that Defendant Taylor

violated one of his constitutional rights, and that the claimed right was clearly established when the challenged conduct occurred, and thus Defendants' motion to dismiss is due to be denied as to Counts Two and Three.

### d.    Malicious Prosecution

Finally, Plaintiff asserts that in Taylor's actions in filing a false criminal complaint against Terry, Jr., he "acted with malice, without just cause, for improper purpose(s), and/or with intent to injure [Terry, Jr.]." *See* Doc. 37 at 43.   "To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable *seizures* in addition to the elements of the common law tort of malicious prosecution."   *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003).   "[T]he Eleventh Circuit has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983."   *Skop v. City of Atlanta,* 485 F.3d 1130, 1144 (11th Cir. 2007) (internal citation and quotation marks omitted).   "[T]he federal right to be free from malicious prosecution is actually a description of the right to be free from an unlawful seizure which is part of a prosecution." *Wood v. Kesler,* 323 F.3d 872, 882 n. 15 (11th Cir. 2003) (internal citation and quotation marks omitted).   Malicious prosecution is "the kind of claim where plaintiff, as part of the commencement of the criminal proceeding, has been unlawfully and forcibly restrained in violation of the Fourth Amendment and injuries, due to that seizure, follow as the prosecution goes ahead."   *Whiting v. Traylor,* 85 F.3d 581, 584 (11th Cir. 1996).   Thus, in order to establish a malicious prosecution claim under § 1983, a plaintiff must establish:

Page **53** of **58**

"(1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures."  *Kingsland v. City of Miami,* 382 F.3d 1220, 1234-35 (11th Cir. 2004) (citation omitted).

Under the Alabama common law tort for malicious prosecution, it must be determined that "the plaintiff has presented substantial evidence of the following elements: (1) that a prior judicial proceeding was instituted by the present defendant, (2) that in the prior proceeding the present defendant acted without probable cause and with malice, (3) that the prior proceeding ended in favor of the present plaintiff, and (4) that the present plaintiff was damaged as a result of the prior proceeding."  *Delchamps, Inc. v. Bryant*, 738 So. 2d 824, 831-32 (Ala. 1999) (citing *Fina Oil & Chemical Co. v. Hood,* 621 So. 2d 253 (Ala. 1993); *Delchamps, Inc. v. Larry,* 613 So. 2d 1235 (Ala. 1992)).  Here, Plaintiff asserts that (1) Taylor submitted a criminal complaint to the magistrate, and charges were subsequently filed; (2) that Taylor's criminal complaint was intentionally falsified to impede or interefere with Plaintiff's ability to file criminal charges against him; (3) the criminal proceedings against Plaintiff were ultimate *nolle prossed*; and (4) "[a]s a direct and proximate result and prosecution of the false criminal charge against [Terry, Jr.], Plaintiffs suffered damage as set out above." *See* Doc. 37 at 43-44.

It has been held that "supplying false information in arrest affidavits violates the Fourth Amendment and can provide the basis for a § 1983 claim.  *Blackshear v. City of Miami Beach*, 799 F. Supp. 2d 1338, 1348-49 (S.D. Fla. 2011) (citing *Jones v. Cannon,* 174 F.3d 1271, 1284–85 (11th Cir. 1999).   Thus, it is clear that Plaintiff has met the first

two common law elements.   However, Plaintiff fails to meet the third element. Plaintiff's prior proceeding was not ruled in his favor, but rather the government entered a *nolle prosequi* which "is a *procedural dismissal* of the charges *without prejudice—not* a *bona fide* termination *in the defendant's favor.*"   *Roddy v. City of Huntsville, Ala.*, 947 F. Supp. 2d 1271, 1303 (N.D. Ala. 2013) *aff'd,* 580 F. App'x 844 (11th Cir. 2014) (citing *Deville v. Marcantel,* 567 F.3d 156, 173 (5th Cir. 2009)); s*ee also* FED. R. CIV. P. 48(a). Thus, Plaintiff has failed to show that the prior proceeding was terminated in his favor. Accordingly, the Court concludes Plaintiff's claim for malicious prosecution against Taylor fails on the merits, and is due to be dismissed.

## V.   CONCLUSION

Accordingly, it is the **RECOMMENDATION** of the Magistrate Judge as follows:

(1)   Defendant Ken Davis' *Motion to Dismiss First Amended Complaint* (Doc. 60) be **GRANTED**;

(2)   Defendant Russell County Department of Human Resources' *Motion to Dismiss Amended Complaint* (Doc. 63) be **GRANTED**;

(3)   Defendant Lizzie Thomas' *Motion to Dismiss Amended Complaint* (Doc. 66) be **GRANTED**;

(4)   To the extent Defendants Sheriff Heath Taylor and Deputy Bob Atkin move to dismiss Count Nine (Denial of Due Process in Juvenile Criminal Prosecution), their *Motion to Dismiss Plaintiff's Amended Complaint* (Doc. 68) is due to be **DENIED**;

(5)     To the extent Defendants Sheriff Heath Taylor and Deputy Bob Atkin move to dismiss all other counts, their *Motion to Dismiss Plaintiff's Amended Complaint* (Doc. 68) is due to be **GRANTED**.

(6)     To the extent Defendants Keith Mitchell, Kenneth Barnes, Jerry Wayne Carpenter, Dillie Elliot, Larry Laney, Eugenia Upshaw, Joseph Williams, Tommy Pugh, Shawn Taylor, and Mike Green move to dismiss the claims against them in their official capacity, their *Amended Motion to Dismiss* (Doc. 90) is due to be **GRANTED**;

(7)     To the extent Defendants Russell County Board of Education, and Keith Mitchell, Kenneth Barnes, Jerry Wayne Carpenter, Dillie Elliot, Larry Laney, Eugenia Upshaw, Joseph Williams, Tommy Pugh, Charles Johnson, Shawn Taylor, Mike Green, Vantreise Davis, and Barry Kirby in their individual capacities move to dismiss Plaintiffs claims under Counts One (excessive force/corporal punishment), Five (failure to protect), and Twelve (denial of procedural due process), their *Amended Motion to Dismiss* (Doc. 90) is due to be **DENIED**;

(8)     To the extent Defendant Shawn Taylor moves to dismiss Counts Two and Three (Assault and Battery), his *Amended Motion to Dismiss* (Doc. 90) is due to be **DENIED**;

(9)     To the extent Defendants Russell County Board of Education, and Keith Mitchell, Kenneth Barnes, Jerry Wayne Carpenter, Dillie Elliot, Larry Laney, Eugenia Upshaw, Joseph Williams, Tommy Pugh, Charles Johnson, Shawn Taylor, Mike Green,

Vantreise Davis, and Barry Kirby in their individual capacities move to dismiss all other counts, their *Amended Motion to Dismiss* (Doc. 90) is due to be **GRANTED**;

(10)   Plaintiffs Edward J. Terry, Sr. and Dymphia M. Terry be dismissed as plaintiffs in this matter;

(11)   Defendants Ken Davis, Russell County Department of Human Resources, Lizzie Thomas, Vivian Relf, Ricky Martin, and Jacqueline Grant be dismissed in this matter; and

(12)   Defendants' *Motion to Dismiss* (Doc. 70) be **DENIED** as moot.[12]

It is further **ORDERED** that the parties are **DIRECTED** to file any objections to this Recommendation on or before **October 13, 2015.**   Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.   Frivolous, conclusive or general objections will not be considered by the District Court.   The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.   *Nettles v. Wainwright*, 677 F.2d 404

---

12 On September 14, 2015, Defendants filed their *Amended Motion to Dismiss* (Doc. 90) which contains all of the same arguments as those contained in their *Motion to Dismiss* (Doc. 70), with the addition of a qualified immunity challenge.

(5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 28th day of September, 2015.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE